Our next case, Bah v. Barr, Mr. Harrison for the petitioner. Good morning, your honors. I may have pleased the court. My name is Brian Harrison. I'm with the law firm of Brian K. Blayton-Paysner. We represent the petitioner in this case, Mr. Hassan Bah, who requests that this court grant his petition for review, vacate the order of removal against him, and find that the statute under which he was convicted is not a crime relating to a controlled substance that would subject him to removal. Virginia law criminalizes the possession of at least 52 controlled substances that are not criminalized under the Federal Controlled Substances Act. The government has conceded that the statute is overbroad as to those controlled substances and that the statutes are not a categorical match. Under Mathis, Moncrief, and Mullooly, the Supreme Court instructs that courts must presume the least acts criminalized, and by doing so, under the Virginia statute at issue 18.2-250A subsection A, means that Mr. Bah is not removable for purposes of a conviction relating to a controlled substance. To avoid this result, the government argues that the statute at issue requires that the Commonwealth identify the specific identity of a drug in the charging documents, in the conviction documents, and in the sentencing documents in order for there to be a conviction under that. Section 18.2-250, however, is divisible as to subsection because different punishments are based on the different schedules in the statute at issue. However, section 18.2-250A subsection A is not divisible as to substance. In order to determine whether the specific identity of a drug is required, this court should follow the Mathis framework. Let me ask that question. It seems like there are two possible ways that subsection A could be divisible. Just understand this in your view, but start from the assumption it is divisible to some degree. One of those options is it's divisible by Schedule 1 and Schedule 2. And then Option 2 would be that it's divisible by the particular substance. So our position is that it is divisible by subsection. And the reason why is... I understand, but I'm only talking about subsection A. So your position is that subsection A is also not divisible with respect to Schedule 1 and Schedule 2. So you couldn't have a modified categorical approach with respect to Schedule 1 and Schedule 2 that was divisible where we look at the Shepard documents. In your opinion, either way, the entirety of subsection A is indivisible. That's correct, Your Honor. And the reason why is because the specific identity of the drug under the Mathis test is merely a means and not an element by which the defendant commits the offense. Going through the Mathis factors, the first place this Court should look is to Virginia law on issue. We've cited to the Sierra case, which references, and the government has also cited, and it references the specific type of substance that's found in a defendant's possession is an actus reus element. Significantly, Sierra references type of substance and discusses the structure of Section 18.2 to be based on different classifications according to the level of offense, or in this case, the punishment, which each of the subsections punishes differently. And as a result, the type of controlled substance is the type based on Schedule 1 or Schedule 2. Speaking of the type of, I'm sorry to interrupt you, but the type of controlled substance, you believe the petitioner was convicted for ethylene possession. Is that right, E-T-H-Y-L-E-N-E? Well, so for purposes of the categorical approach, the inquiry is as to whether or not the element, what are the elements of the offense in the record. And for our purposes, our argument is that the conviction order shows that Mr. Bob was convicted of ethylene, as is the amended indictment. Okay, so the answer is yes, that's what you contend he was convicted of, ethylene possession. But is ethylene, is it in Virginia's drug schedules at all? No, so ethylene is not a controlled substance in Virginia. So how do we reconcile that? That makes it seem more likely that this was just a scrivener's error, as the government argues. So, Your Honor, to that point, when applying the categorical approach, the inquiry is what are the legal elements required. And for our purposes here, if you look at the record of conviction documents, which the conviction order is one of them, the amended indictment is another, the sentencing order is a third, and finally the findings of facts by the trial judge at the bench trial is a fourth. Among the four of those, there are four different substances mentioned. If the specific identity of the substance was an element of the offense, which the Supreme Court of Mathis has made clear, elements are factual circumstances that a jury must find unanimously beyond a reasonable doubt, then it cannot be reconciled that they are elements rather than means. Counsel, I have a factual question about the amended indictment. Where there's the mark out with the handwriting, then someone's handwritten in a scientific name, and then in parentheses what you say looks like ethylene instead of ethylene. That scientific name, is that the scientific name for ethylene? I believe that the scientific name matches that for ethylene. But for purposes, again, for purposes of the categorical approach, the significance of the amended indictment is that the court did it by request of the Commonwealth attorney in open court without returning the indictment to a grand jury, which is required under Virginia law where the nature or character of the offense changes. If the specific identity of the substance was in fact an element,  So your argument, if I understand it correctly, is that all these changing ethylene, ethylone, it's two, three different things in different places, necessarily means that the actual identity of the drug is not an element. Absolutely. It's a means. Absolutely, Judge Thacker. And further, the trial judge, in his findings of fact, noted, quote, I find you guilty of possession of MDMA or whatever it is you had. So a Virginia... Does the judgment order, I'm looking at 264, doesn't that say convicted of count one as listed in the amended indictment? It does. Okay. So that's the scientific name for ethylene. It does, Judge Rushing. But again, to the same point that I was discussing with Judge Thacker, the specific identity of the drug for purposes of the categorical approach only is to identify whether or not that substance is an element or means. Right. So go back to, again, where you started, and I want you to talk about why we ought to ignore the model instructions too. But you were talking about the Sierra case where it says the type of drug is an element. Right. And help me out. So I think of the type of drug as being cocaine, marijuana, heroin, whatever. That's the type of drug. The classification of that drug, that's schedule one, two, three, four, five, is separate from the type. Why do we think when the Virginia courts, and we're just sort of deferring to the Virginia courts here, right, on whether it is or isn't an element, Virginia court says the type of drug is an element. I'm having trouble figuring out how we get around, how you get around that description of what is an element of the offense. Well, so our reading of that part of Sierra, of different classifications of the level of offense based on the type of controlled substance a defendant actually possesses, as we've referenced in our brief, type means a category or group. And here the categories or groups are schedule one, schedule two, and the other controlled substances. And to your point about the ñ So in a sense your position depends on that, that type in this context refers to classification, not the type of drug. Well, our argument as to Sierra hinges on that. However, Mathis instructs that if there are not clear answers in the state case law, the court can look to the statute itself, which punishes by schedule, not by substance, unlike other Virginia statutes, which punish by specific substance or identity of substance. And then the last point is the record of convictions. What about the Virginia case Howard versus the Commonwealth, where they allow a single capsule that has heroin and fentanyl in it, and they say because these are different types, they're different elements, you can be convicted of two separate offenses, one for the heroin and one for the fentanyl. How does that ñ So Howard's ñ the issue in Howard was a mens rea issue as to whether or not a defendant who claimed to not have knowledge of two separate controlled substances could be convicted for two separate controlled substance possessions. The court in Howard delineated the specifics by units. So a controlled substance under Schedule I was a unit that could render a conviction, and a controlled substance under Schedule II was also a unit that could render conviction. But that suggests that subsection A is at least divisible with respect to Schedule I and Schedule II. I don't think so, Your Honor. I think that because Howard also relies on Sierra for the reference about the specific type of controlled substance, and it also ñ the importance about Howard also notes that it's ñ the legislative intent is to criminalize the possession of controlled substances. And so by allowing for the prosecution of two crimes for two possessions of controlled substances based on the units, Howard allows for ñ Howard addresses the mens rea component of those. I'd like to go back to the jury instructions that you referenced earlier. Because Howard didn't ñ didn't ñ I'm sorry, Sierra didn't actually say it had to be the ñ that it was the actual substance in the defendant's possession is the mens rea. It said the specific type, and that makes a difference. To our argument, it does, yes, Your Honor. So to the jury instructions, we have ñ in the record in this case, there are four different jury instructions. There are Virginia-modeled patterned jury instructions as well as Virginia-practiced jury instructions. Some of those include spaces to identify the specific identity of the substance, and some of them do not. Others allow for the insertion of just, quote, a controlled substance, end quote. Because the jury instructions cut both ñ Wait, wait, I'm sorry, say that again. So you're saying where it says a controlled substance, but that's an insertion point, right? That suggests that you're putting in what the controlled substance is. In the list of possible identifications within the parentheses, there is a controlled substance, a controlled substance, or a to identify the specific controlled substance. And given that the jury instructions ñ and then there are some that require it. Where is that, just so that ñ I'm not familiar with that one. Where is that one in the record, just so I can be sure to see it? AR-397 is one of them that we identified. And that's not the model. That's done by some ñ a private entity. These are the Virginia model jury instructions. And there, the blank is, knowledge that the substance manufactured, distributed, or possessed is, quote, bracket, marijuana, name of controlled substance, a controlled substance, end bracket, is an element of the offense. There are other jury instructions that are similar in this regard. And because they ñ because it's not required that the specific identity of the substance is included as part of the jury instructions, we think that cuts in our favor to suggest that the identity of the substance is not an element of the offense, but merely a means. We've also identified in the record several cases in the Commonwealth where a defendant was either charged, pled, sentenced, or in a verdict form where it was for general, quote, possession of a controlled substance, end quote. We've identified those on page 28 of our brief. Because the Commonwealth does not require, and the instances that we've provided do not specify the specific substance, what this means for purposes here for Mr. Baugh, given the government's concession that the statute is overbroad, is that if Mr. Baugh had simply been charged for a general possession of controlled substance without the specific identity of the drug, because the statute is overbroad, there would be no basis for which Mr. Baugh could be subject to removal because of the least criminalized acts presumption. I would like to just briefly address the modified category. If this Court were to not agree that the statute is indivisible, under the modified categorical approach, our position is that the government has not met by clear and convincing evidence its burden to show, based on the ambiguity of the records, that Mr. Baugh was convicted of an offense relating to a controlled substance. Thank you. All right. You have some time in rebuttal. Mr. Bates. Whenever you're ready. I'm sorry. Good morning, Your Honors. May it please the Court. Christopher Bates for the respondent. The Virginia Possession Statute is divisible by a controlled substance. This is apparent both from authoritative sources of state law and from the record in this case. Starting with authoritative sources of state law, the Sierra and Howard cases, which this Court has been discussing this morning, both indicate that, in the words of Sierra, the specific type of substance found in a defendant's possession is an actus reus element that the Commonwealth must prove, or in the words of Howard, that the actual substance in a defendant's possession is, again, an actus reus element that the Commonwealth must prove. Howard's unpublished, right? Howard is unpublished. That's correct. So Sierra is the precedent. So Sierra is the published precedent, Your Honor. Other circuits. It doesn't matter what Howard says. Well, other circuits, including the Fifth Circuit, have, and the Eighth Circuit, have looked to unpublished state decisions to inform the Court of Appeals analysis as to divisibility. And so it is not a presidential decision of the Virginia Court of Appeals, but it still is some indication of how Virginia courts treat the issue. And so the argument there, in essence, is that your counsel wanted to talk about the type could refer to classification, schedule classification. And just so I understand the distinction, your argument is where it says specific type of substance, that is plainly not referring to classification, but instead to the specific type of substance, not to be repetitive. And that specific type of substance, in your view, refers to marijuana, cocaine, heroin, whatever the listing includes. Yes, Your Honor. The government's position is that the better reading of that phrase, specific type, as used in Sierra, is that it refers to the identity of the substance, that that's the most natural reading of that phrase. In addition, the Court there uses the word specific, that that, again, narrows the meaning there. And I would also just point out, although this is not necessarily dispositive, on this issue that other lines, in the opinion, use the word type in contexts that refer to specific controlled substances. And just to point out one line, later on in the opinion, in describing the Federal Possession with Intent to Distribute Statute, that's 8 U.S.C. 841, the Court in Sierra uses the word type to refer to substances listed in that statute's penalty section, which identifies numerous specific substances, including cocaine, heroin, and PCP. So while not necessarily dispositive that the word type, in the specific sense in Sierra that we're talking about, refers to identity, that that at least shows, in other places in the opinion, the Court has used the word type to refer to a specific substance. And is it also true in the Sierra case, I mean the argument that's being made with respect to the mens rea requirement is not to the scheduling of the drug, but the name of, or the actual identity of the drug, marijuana, cocaine, heroin. In Sierra, part of the discussion is about whether the knowledge element applies to the specific type of drug. That's not, the argument made there was to the name of the drug, not its classification. So Sierra draws a distinction between mens rea requirements and actus reus requirements. Sierra holds that for purposes of mens rea, the defendant need not know the exact substance that the defendant was found in possession of, that the defendant only know that the substance was an unlawful controlled substance. But it distinguishes between mens rea and the actus reus and says that for purposes of the actus reus, that the commonwealth must prove the specific type of controlled substance. Can you respond to his jury instruction argument? So at least one of the model jury instructions indicates that the name of the drug is an element of the offense. He points to a separate knowledge instruction, not the elements of the offense, but he points to a separate knowledge instruction to suggest an alternative reading, that it's not an element. Can you respond to that? Yes, Your Honor. So the jury instructions that opposing counsel cited are on page 97 of the administrative record. If you look at those instructions, they say knowledge of character. And I believe that if you read through those instructions, that those instructions are referring to the mens rea element, speaking of the defendant's knowledge of the character of the substance. And as we discussed, Sierra draws a distinction between mens rea and actus reus and holds that for purposes of mens rea, the defendant need only know that the substance was unlawful. And so these jury instructions are consistent with that holding in Sierra as applied to mens rea. If you look to, as we discussed in our brief, elsewhere in the administrative record to AR 258, which are the model and jury instructions for the possession statute, more generally, you see there that the judge is instructed to specify for the jury the specific name of the drug. The phrase name of drug in parentheses appears multiple times in those model jury instructions. This is, again, AR 258. And specifically directs the judge to instruct the jury that, quote, if you find that the commonwealth has failed to prove beyond a reasonable doubt that the defendant possessed, in parentheses, name of drug, then you shall find the defendant not guilty. So those instructions specifically instruct the judge to specify for the jury that they are to focus on the, quote, name of the drug. Council, I have a somewhat tangential question, but where is ethylene listed on the federal drug schedule? Is it a variant of MDMA? I couldn't identify it myself. Thank you, Your Honor. Let me just turn my notes on that. So ethylene, I'm sorry, ethylene is a federal Schedule I controlled substance per, and this is the regulation that sets for Schedule I substances, 21 CFR 1308.11, paragraph D62. The word ethylene does not appear in that specific paragraph, but ethylene is a positional isomer of butylone, and that paragraph, which I don't have in front of me, but my recollection is that paragraph D62 makes butylone a Schedule I substance, and elsewhere in 1308.11 says that positional isomers of Schedule I substances are considered controlled substances. So it's a bit of a circuitous route. Now, by contrast, ethylene is separately listed on the Virginia Schedule I. So if you look at Virginia Code 54.1-3446, you'll see ethylene is separately listed on the Virginia Schedule I controlled substance list. Finishing up with divisibility here, the Supreme Court has also said that in determining whether a statute is divisible, it's also appropriate to look to the record in the case. The record in this case also indicates that the Virginia Possession Statute is divisible as to controlled substance. We see this because the indictment in this case, both the original indictment and the amended indictment, identified the specific substance that Mr. Baugh was charged with possessing. The original indictment said methylene dioxymethamphetamine, or MDMA. The amended indictment said methylene dioxyethanone, whose shorthand name is ethylene. And in Mathis, the Supreme Court said that an indictment may indicate, quote, by referencing one alternative term to the exclusion of all others, the statute contains a list of elements, unquote. And that's what the indictments in this case did, is that they referenced one alternative term, a specific substance, indicating that that was an element of the offense. To respond briefly to opposing counsel's argument about the amendment to the statute, if the controlled substance is an element, then you cannot amend as was done in this case. I will respond to a couple of cases that we cited in our briefs. The first is the Hicks case. Hicks says that an indictment that changes, quote, the specific elements of the charge, unquote, is permissible, provided that the general nature or character of the offense does not change. So Hicks addresses whether an indictment can change elements under Virginia Code 19.2231 and says that the elements can change, so long as the general nature or character of the offense does not change. In another Virginia case, it's mentioned in the Brees Powell, says an amendment does not change a crime's general nature or character, where the amended charge is for a, quote, felony of the specific class denounced by the statute. Here the amendment to the indictment did not change the class, so it was not a change to the general nature or character of the offense. To turn to the modified categorical approach, so if this course finds, as we have argued, that the Virginia Possession Statute is divisible, it's then appropriate to apply the modified categorical approach. And there the government would submit that the record does show that Mr. Shepherd has been charged with the possession of a felony. And what records does the government consider to be properly within the record of conviction that we can consider? So in Shepherd, the Supreme Court identified documents such as the charging document, the, I'm not sure what the price term is, but the documents of conviction, basically, so that would include the conviction order in this case. And both do indicate. Hasn't the government gone a bit beyond the charging document, though, in this case? So there are other documents in the record that do suggest or do indicate that Mr. Baugh was convicted of possession of methylene deoxyethacanone. The consideration of those documents is not necessary to find. Which documents does the government rely on? So I would point specifically to the amended indictment and to the conviction order, and would submit that those two documents are sufficient bases to find. When you say the conviction order, just so that we're clear, what is the JA for the order that you believe is the document to rely on? So the conviction order is at AR 263. 263? 263. And that's the one that says as reflected in the amended indictment? Yes, as charged in count one of the indictment as amended. So that's correct, Your Honor. And that amended indictment does, as Judge Rushing had asked earlier, does list the full chemical name, methylene deoxyethacanone. The amendment is handwritten, so some of the letters may not be entirely clear, but it is certainly clear that the amended indictment lists the full chemical name, methylene deoxyethacanone, whose shorthand name is ethylene. And then in the conviction order, as Judge Richardson, as you just mentioned, the conviction order says that Mr. Bob was found guilty, quote, as charged in count one of the amended indictment. There has been discussion this morning and in the briefs that that conviction order does say ethylene. The government would submit that that is a Scribner's error. Ethylene is not a controlled substance under either the federal order. Wait, it does say, I think you just got it backwards, it does say ethylene. Ethylene, Your Honor. I'm sorry, I misspoke. Ethylene is not a controlled substance within either the Virginia or federal controlled substances schedules, so Mr. Bob could not have been convicted of possessing ethylene. The conviction order also misspells marijuana as marihuna, so there are other spelling errors in that conviction order. But he only could not have been convicted if it was an element. Right? So if... An element versus just a means. If it really mattered, it could only matter so much to the conviction that he could not have been convicted, whatever the name of the drugs were, if it was an element. You argue that it's an element, right? So we do argue it's an element, Your Honor. Even if it were not an element, I don't think that an individual could be convicted of possessing a substance that is not a controlled substance at all, whether it's an element or a means. There must still be some showing, though. So your argument is that whether it's an element or a means, the fact that ethylene is not listed in Virginia as a controlled substance at all makes a difference. It indicates here that the conviction was for methylene dioxyethcathinol. That's correct, Your Honor. And that's why it was a Scrivener's error. Yes. Yes, Your Honor. And so under the modified categorical approach, the record does indicate that Mr. Bob was convicted of possessing methylene dioxyethcathinol. One last point for the Court's information. We do mention in our brief the Carcamo case, which is an unpublished decision of this Court. Mr. Bob mentions some cases from outside of this circuit that he says favor his position. We do mention the Carcamo case in our brief. It does concern the D.C. Possession with Intent to Distribute statute, which is similarly structured to statute in this case. And there are various other similarities between the Carcamo case and this case, including that D.C. case law had held that possession of two different types of controlled substances are separate offenses, like in the Howard case. The D.C. Model Jury Instructions had a space to identify the name of the controlled substance. That's true in this case as well. And that as the Court in Carcamo emphasized, the D.C. Possession with Intent to Distribute statute referred to an  And so the reasoning in Carcamo. Let me, just before your time runs out, Judge Snacker asked you about the world of Shepard documents that you can consider. The statement made by the judge to the effect of MDMA or whatever you had, is that statement included in a document that the government would concede is a Shepard document, or is that not a document that we could consider? In other words, if it had said exactly what you wanted it to say, which it doesn't, could you have relied upon that to establish the modified categorical piece? So, Your Honor, I think it's a little bit unclear. So if you look at the trial transcript, the judge's statement there follows several minutes where a defense counsel in the case actually misidentified the drug himself. The defense counsel called it MDMA, so I think the defense counsel had sort of confused the judge about what was going on there. And just leading up to that statement by the trial judge, the defense counsel had requested some additional time to investigate a drug offense that Mr. Richardson, Mr. Bobbitt, convicted of. When the government says that, it makes a man nervous. Luckily, I caught myself before I got the injury. Now I've lost my train of thought. So that statement by the trial judge came in response to a request by defense counsel to have some time to investigate a conviction that Mr. Bobbitt had in D.C. for purposes of determining whether he was eligible for what's called a 251 disposition, which is like probation for a first-time offender. And the judge says, well, let's do it this way. I find you guilty of this, but we'll give you some more time. So I think it's a little unclear exactly what the formality of that statement was by the judge because it was made in the context of, you know, I'm going to give you some more time to investigate this. A request for a continuance, not a specific finding. That would be the argument, at least, that you're putting out. Yes, Your Honor. Okay. Well, if there are no further questions, the government would ask the court to deny Mr. Bobbitt's petition for review. Thank you. All right. Mr. Harrison. Just before you get started, can I ask one question to make sure that we're on agreement? Counsel answered the question about whether ethylone is a scheduled substance under federal law. You agree that it is, regardless of the route it takes to get there. You're not contesting that ethylone is included in this 21 CFR section that we described? That's correct. It's our understanding ethylone is a positional isomer butylone. You basically agree with that theory? Yes. Great. A few points to make in rebuttal. Judge Thacker, your question about the conviction order is exactly on point regarding if the specific identity matters, then the differing interpretations of what the specific substance was over the course of these proceedings would have no effect. Wait, so in other words, if he was in possession, if the court found that he was in possession of tied detergent, a non-controlled substance, it couldn't convict him of a controlled substance offense, whether it's a means or an element or anything? That's true, Your Honor. But what remains consistent here is that in each of these, it's a Schedule I or Schedule II controlled substance. But ethylene isn't on the list. I thought ethylene wasn't on the list of controlled substances in Virginia. It is not, nor is it a federally controlled substance. So what do we do with that? So the significance there is that it shouldn't matter, and the reason why it shouldn't matter is because it is not necessary in order for the court to find a possession offense in Virginia with the specific identity of the drug. It's Schedule I or Schedule II. We've seen that with the trial judge here in this case where he outlined, I find you guilty of MDMA or whatever it is you had. It didn't matter to the trial judge, and the specific identity varied from the amended indictment to the trial judge's findings of facts, which are properly records of conviction documents. But they're all talking about, I mean, at every stage, they're all talking about the type of drug. Nobody in any of this point has said Schedule I or Schedule II. We haven't seen any description of being the schedule as being the question. The question is always what it is. And I get the judge was a little confused at one point about what's MDMA, and there's a discussion about the spelling of ethylene versus ethylone, but they're always talking about the specific type of drug. Well, there is always reference to Schedule I or Schedule II in regards to those in the amended indictment and in the sentencing order and the conviction order as well. The government's reliance on parts of the trial transcript that do not constitute the findings of facts and conclusions of law are not proper Shepard documents before this court. But I would note to their argument about Scrivener's Error, the word ethylene is repeated in several instances in this case, in the amended indictment, throughout in the court's conviction order. So for it to be a mere Scrivener's Error furthers our argument that the identity of the substance is a means. And as Justice Kagan notes in the Mathis decision, means are mere facts. And defendants often have no opportunity or incentive to dispute mere facts because those do not require a unanimous finding beyond a reasonable doubt. And every reason to dispute it here because if it's ethylene, he's not guilty. But Judge Richardson, I think that goes to our point that even the prosecutor, the court, and the defense attorney didn't care what the specific identity of the substance was. It was simply that it was a controlled substance under Schedule I or Schedule II. And just to go back to my point about what Justice Kagan said in Mathis, the inconsistencies, there are often inconsistencies in the criminal records for means because the defendant has no opportunity to dispute those or incentive to do so as well. And as she said, inconsistencies, quote, should not come back to haunt defendant down the road. And unfortunately, it's our position that the government is attempting to do that here by seeking to remove Mr. Bob for an offense that is overbroad and not a controlled substance offense under the federal statute. And for those reasons, we would ask that this court grant his petition for review, vacate the removal order, and find that the statute at issue is not divisible and not a grounds for which he is removable, and remand these proceedings to the Immigration Court so that he can adjust for his status on the other grounds. Thank you. All right, thank you. Perfect timing. We'll step down and greet counsel, and then we'll take a 10-minute recess.
judges: Stephanie D. Thacker, Julius N. Richardson, Allison J. Rushing